BANCO COMERCIAL DE PUERTO RICO, PETICIONARIO, *v.* JUEZ
DE LA CORTE DE DISTRITO DE SAN JUAN, DEMANDADO.

SOLICITUD para que se expida un auto de *certiorari* contra el
Juez de la Corte de Distrito de San Juan, Primer Dis-
trito, en un procedimiento de sindicatura.

No. 337.—Resuelto en diciembre 15, 1921.

*Certiorari*—APELACIÓN.—Cuando el recurso de apelación no es todo lo rápido y
eficaz que las circunstancias requieren, procede el *certiorari*.

SINDICATURA — CRÉDITOS PREFERENTES — CORTES: FACULTADES DE LAS MISMAS —
POSPOSICIÓN DE CRÉDITOS PREFERENTES.—En el presente caso se puso bajo
sindicatura una corporación azucarera y todos los acreedores pospusieron sus
créditos preferentes a fin de contratar un empréstito por veinticinco mil dó-
lares para salvar la vida de la corporación. Terminada con deudas la zafra
pendiente, el síndico solicitó autorización judicial para emitir nuevos certifi-
cados preferentes por $59,366.90, para gastos de la nueva zafra. El acreedor
hipotecario opúsose a la preterición de su crédito, pero dió su consentimiento
para un préstamo no mayor de $30,000 con garantía de los productos, cir-
cunscribiendo su preferencia al "corpus" de la propiedad. Recurrida por
*certiorari* la orden que concedió sin limitaciones la autorización pedida por el
síndico, *se resolvió:* que la preferencia del acreedor hipotecario no puede
ser postergada contra su voluntad manifiesta no siendo de aplicación bajo
las circunstancias de este caso la jurisprudencia que autoriza a las cortes
para ordenar, con preterición de créditos asegurados, el pago de créditos con-
traídos bajo su dirección por el síndico para la continuación de un negocio
cuya paralización produciría grandes pérdidas.

Los hechos están expresados en la opinión.

Abogado del peticionario: Sr. *J. Sifre, Jr.*

Abogado del síndico: Sr. *J. H. Brown.*

Abogado de los interventores: Sr. *H. G. Molina.*

El juez demandado no compareció.

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del
tribunal.

El presente es un recurso de *certiorari* interpuesto por
el Banco Comercial de Puerto Rico a los efectos de que esta
Corte Suprema revise y declare nula cierta orden dictada
por la Corte de Distrito de San Juan, Primer Distrito, auto-
rizando en un caso de administración judicial la expedición
de certificados preferentes, no obstante la oposición del acree-
dor hipotecario. El auto fué expedido. Los documentos ori-

ginales se elevaron a esta corte y en la audiencia del 5 de diciembre actual el peticionario y el síndico comparecieron por medio de sus abogados y sostuvieron sus respectivas pretensiones. También comparecieron por su abogado y se adhirieron a la petición de nulidad los interventores Melchior, Armstrong and Dessau, Inc., segundos acreedores hipotecarios. El síndico se opuso pero no solicitó la suspensión de la vista y en ésta fueron oídos los dichos interventores.

Los hechos, en resumen, son así: el 10 de mayo de 1921, la Corte de Distrito de San Juan, a petición del Banco Comercial de Puerto Rico, acreedor hipotecario de la corporación privada azucarera "Central Bayaney," nombró a Ramón Soler síndico de dicha corporación.

Tres días después se autorizó al síndico para contraer un préstamo por la suma de veinticinco mil dólares garantizado con certificados preferentes a todos los otros gravámenes inclusos los hipotecarios. Los acreedores hipotecarios consintieron, el préstamo se negoció y la zafra de la central continuó hasta su terminación.

Habiendo cesado en sus funciones de síndico Soler, la corte nombró para sustituirle a Jorge E. Saldaña. Hecho un estudio de la situación, el nuevo síndico se dirigió a la corte solicitando que se le autorizara, a fin de poder llevar a efecto la zafra de 1922, para contraer un préstamo por la suma de $59,366.90, garantizado con certificados expedidos en la forma y bajo las condiciones que la corte estimare procedentes.

Consta de los autos que las partes fueron citadas y aparece de ellos que el acreedor hipotecario Banco Comercial de Puerto Rico estuvo conforme en que se autorizara al síndico a tomar a préstamo con el propósito indicado treinta mil dólares garantizados "por certificados de deuda suscritos por el *receiver,* los cuales certificados tendrán como garantía el beneficio industrial de Central Bayaney, Inc., du-

rante la próxima cosecha y no el '*corpus*' de las propiedades de esta corporación.''

Consta también de los autos que en noviembre 18, 1921, Melchior, Armstrong and Dessau, Inc., interventores en el procedimiento, archivaron un escrito que termina así: ''la interventora respetuosamente solicita de la corte no ordenar que los certificados del '*receiver*' tengan preferencia o gravamen alguno sobre los bienes de la demandada que se encuentran hipotecados a la interventora en preferencia a la hipoteca de la interventora.''

No obstante la oposición de los acreedores hipotecarios, la corte de distrito autorizó la contratación del préstamo garantido con certificados, fijando el montante en treinta mil dólares y disponiendo ''que dichos certificados constituirán un derecho preferente y primer gravamen sobre todos los bienes de la demandada dentro de la Isla de Puerto Rico y con prioridad al gravamen de las hipotecas constituídas por la compañía demandada a favor de la corporación demandante.''

Basta la exposición de los anteriores hechos para concluir que este caso debe resolverse en favor del peticionario de acuerdo con la jurisprudencia establecida por esta misma Corte Suprema en el caso de *Sobrinos de Ezquiaga* v. *Rossy*, 21 D. P. R. 387. Allí dijimos:

''La cuestión a resolver queda, pues, planteada en los siguientes términos:

''¿Puede una corte alterar las condiciones de un contrato celebrado voluntaria y válidamente al amparo de las leyes? ¿Lleva consigo la facultad que tienen las cortes para nombrar síndicos en ciertos y determinados casos, la de tomar absoluto control sobre la propiedad de que se dé posesión a los síndicos de tal manera que pueda variar el orden en que dicha propiedad había sido anteriormente gravada por sus dueños?

''Hemos estudiado cuidadosamente la ley y nada dispone sobre el particular. Hemos estudiado de igual modo la jurisprudencia y

no encontramos que se haya ejercitado tal poder en casos iguales al que está sometido a nuestra decisión.

"¿Qué garantía puede ofrecer a los ciudadanos de un país una ley que clara y terminantemente asegura el pago de un crédito en un orden determinado, si un juez puede después discrecionalmente alterar el contrato de tal modo que haga completamente ilusoria la seguridad pactada?

"Reconocer tal poder en la judicatura en ausencia de una disposición legislativa previa y clara, sería ir en contra de los principios fundamentales que informan nuestro sistema de gobierno.

"Cuando surge una situación difícil en los negocios de una corporación, cuando los en ella interesados tienen confianza en que aquella situación es transitoria y podría salvarse con un esfuerzo supremo, los mismos interesados generalmente por su propia voluntad postergan sus derechos en la esperanza de verlos reconocidos en toda su plenitud en el futuro. De ahí que se registren muchos casos en los cuales se ha recurrido al medio de la expedición de certificados de síndicos preferentes autorizada por el poder judicial, a fin de obtener ciertas sumas de dinero especialmente garantidas que permitan hacer frente al conflicto. Pero no se ha recurrido, ni se comprende que se recurra, a tal medio, cuando los mismos interesados se oponen.

    ＊    ＊    ＊    ＊    ＊    ＊    ＊

"La jurisprudencia americana es abundante sobre la materia, y por ella se ha establecido una distinción bien marcada entre los poderes de una corte cuando interviene en la administración de una corporación cuasi pública y cuando dirige, por medio de síndico, los negocios de una corporación privada.

"En el caso de *Hooper* v. *Central Trust Co. of New York*, 29 L. R. A. 262, 263, la Corte de Apelaciones de Maryland, llegó a la siguiente conclusión:

" 'Los gravámenes adquiridos sobre la propiedad de individuos o de corporaciones privadas, no pueden postergarse por medio de certificados de síndicos.'

"En el caso de *Merriam* v. *Victory Min. Co. et al.*, 60 Pac. 997, la Corte Suprema de Oregón resolvió lo que sigue:

" 'El derecho de una corte que nombra un síndico a una corporación para dar prioridad al pago de deudas no aseguradas, sobre el gravamen de bonos garantizados con primera hipoteca, está restringido a los acreedores de ferrocarriles, que son negocios de interés

público, y no puede ejercitarse para dar tal preferencia a acreedores no asegurados de una corporación ordinaria sobre gravámenes constituídos por contratos.' '' 21 D. P. R. 399 a 401.

Sigue esta corte estudiando varios casos más resueltos por los tribunales americanos, que creemos innecesario citar.

Con lo expuesto debería quedar resuelto este caso, pero el síndico levantó por escrito y oralmente en el acto de la vista dos cuestiones que requieren el estudio de la corte. Sostuvo; 1, que no procede el *certiorari* porque la orden que se trata de anular es apelable, y 2, que dicha orden según los mismos hechos expuestos en la petición, es válida estando en todo caso el peticionario impedido de impugnar su validez.

Implícitamente la primera cuestión levantada está resuelta también en el caso de *Ezquiaga* v. *Rossy, supra,* pero aún cuando pudiera concluirse que la orden de que se trata era apelable, como dadas las circunstancias que concurren en este caso el recurso de apelación no sería todo lo rápido y eficaz que dichas circunstancias requieren, ya que la zafra para la cual se necesita el dinero deberá comenzar en este mismo mes de diciembre de 1921, es procedente el *certiorari.*

La segunda cuestión es más complicada. Dice el síndico en su alegato así:

"El *receiver*, a petición del mismo peticionario, fué nombrado no sólo para conservar, proteger y preservar los bienes de Central Bayaney, demandada en el pleito principal, sino para seguir en el negocio de dicha demandada y continuar la empresa a que se dedicaban los bienes de dicha demandada como negocio en marcha."

Y luego cita la jurisprudencia tomándola del resumen que de la misma hace Ruling Case Law y que es como sigue:

"Aunque la regla general en cuanto a la preservación de los derechos existentes de los acreedores es como antes se ha enunciado, no hay cuestión de que una corte de equidad que ha nombrado un síndico para hacerse cargo de la propiedad y para cuidar de ella y protegerla puede declarar que los gastos para ello incurridos cons-

tituyen una reclamación y gravamen preferente contra la propiedad, anterior a todas las hipotecas u otros gravámenes. La propiedad se vuelve responsable de los gastos necesarios incurridos en cuidarla y preservarla, incluyendo los honorarios del síndico por sus servicios. El es el oficial y agente de la corte y no de las partes; y es un derecho de la corte esencial a su propia eficiencia para la protección de cosas así situadas, el tenerlas bajo su supervisión hasta que tales gastos y honorarios son pagados o su pago asegurado. Los honorarios de abogado que sean adecuados, al igual que otros gastos de administración, tienen preferencia sobre gravámenes pre-existentes contra los fondos; pero ellos sólo pueden ser determinados y concedidos por la corte que nombró el síndico. El nombramiento de un síndico y el hecho de que la corte, por medio de su oficial, toma la propiedad en sus manos, no la exime de pagar contribución. Queda sujeta a tasación y al pago de todas las contribuciones legales sobre la misma mientras está *in custodia legis,* en igual condición que cuando estaba en posesión de su dueño. Y ya sean o no tales contribuciones un gravamen o una deuda de acuerdo con las leyes del gobierno dentro de cuya jurisdicción la propiedad está situada, tales contribuciones son y deben ser consideradas por las cortes, una reclamación preferente y superior a todas las demás reclamaciones, excepto las costas judiciales. Además de los gastos arriba mencionados contra la propiedad en manos de un síndico, y que se consideran preferentes a otros gravámenes, hay una sana equidad que apoya la doctrina de que cuando la naturaleza de la propiedad es tal que el negocio a que ha estado dedicada no puede ser suspendido sin probabilidad de grandes pérdidas, la corte puede autorizar que éste sea continuado por su oficial y síndico, mientras se terminan los asuntos de la corporación insolvente. Los gastos incurridos por un síndico en tales circunstancias pueden justamente considerarse como gastos de preservación para beneficio de los accionistas y otras personas con derecho a participación en la distribución final, que deben ser pagados con preferencia. Las cortes también han asumido ir más lejos y conceder preferencia de pago a las deudas contraídas por la corporación insolvente durante los últimos meses anteriores al decreto de insolvencia, por trabajo, materiales y gastos necesarios y corrientes incurridos en la lucha por mantenerse en pie. Se ha resuelto, sin embargo, que cuando la Legislatura ha indicado la clase de acreedores cuyas reclamaciones deben ser preferidas, la corte está privada de facultad para extender la preferencia a otra clase. La facultad de un síndico para expedir certificados dando preferencia

sobre gravámenes existentes, es tratada en otro lugar de este artículo.''  23 R. C. L. 109–110.

Para aplicar la anterior jurisprudencia, es necesario estudiar las circunstancias de cada caso.  Aquí se nombró un síndico y todos los acreedores pospusieron sus créditos preferentes a los efectos de contratar una operación específica —el primer préstamo de veinticinco mil dólares—y a fin de salvar la vida de la corporación.  Pero la zafra pendiente terminó con deudas y ahora se pretende comenzar bajo la misma sindicatura la nueva zafra.  Una situación distinta se presenta y entonces las partes interesadas se avienen a que el estado creado continúe pero con ciertas limitaciones.  El acreedor hipotecario está conforme en circunscribir su garantía al ''corpus'' de la propiedad, da su consentimiento a la contratación de un préstamo de treinta mil dólares con una garantía preferente sobre los productos y sostiene que si ésto no es posible, si los mismos productos no son suficientes para pagar lo que se invierta en obtenerlos partiendo de la base de que el mayor gasto está ya hecho, entonces la sindicatura debe terminar.  Y a nuestro juicio la posición del acreedor hipotecario es enteramente correcta y la jurisprudencia citada no puede invocarse para destruir necesariamente su preferencia consagrada por la voluntad de las partes interesadas consignada con todas las solemnidades de ley en un contrato.

En cuanto a que el peticionario por haber sido el acreedor que solicitó el nombramiento del síndico esté impedido de oponerse a la orden de la corte, diremos que aún cuando nos inclinamos a resolver la cuestión en la negativa (véase el caso *Smith* v. *Shenandah Valley National Bank*, 246 Fed. 379), no es necesario que emitamos nuestro criterio ya que en el acto de la vista compareció otro acreedor hipotecario que no había solicitado el nombramiento de síndico y que se opuso en tiempo y forma y continuaba oponiéndose a que el préstamo de treinta mil dólares para la nueva zafra se auto-

rizara con una garantía preferente a los gravámenes hipotecarios.

Por virtud de todo lo expuesto se anula la orden del 18 de noviembre último en cuanto por ella se decidió que el préstamo de treinta mil dólares que se autorizó contraer al síndico constituyera un gravamen preferente a los créditos garantizados con hipotecas existentes sobre los bienes de la Central Bayaney.

> *Anulada la orden de 18 de noviembre de 1921, en cuanto a que los certificados que el síndico expidiera para garantizar el préstamo de treinta mil dólares tuvieran preferencia sobre los gravámenes hipotecarios.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.